[Cite as *State v. Smith*, 2014-Ohio-712.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 13AP-592 |
| v. | : | (C.P.C. No. 12CR-11-5653) |
| Gino M. Smith, | : | (ACCELERATED CALENDAR) |
| Defendant-Appellant. | : | |

---

D E C I S I O N

Rendered on February 27, 2014

---

*Ron O'Brien*, Prosecuting Attorney, and *Laura R. Swisher*, for appellee.

*Tyack, Blackmore, Liston & Nigh Co., L.P.A.*, and *Jonathan T. Tyack*, for appellant.

---

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1}  Defendant-appellant, Gino M. Smith, appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas. Because the trial court did not err when it denied appellant's motion to suppress, we affirm that judgment but remand the matter for the trial court to correct a clerical error in its judgment.

## I.  Factual and Procedural Background

{¶ 2}  On November 6, 2012, a Franklin County Grand Jury indicted appellant with counts of possession of marijuana and possession of cocaine, both in violation of R.C. 2925.11. Police found the drugs in appellant's car after stopping him for failure to use a turn signal in violation of Columbus City Code ("C.C.C.") 2131.14(a). Appellant entered a

not guilty plea and subsequently filed a motion to suppress the drugs. Appellant argued that he did not commit a traffic violation and, therefore, the officers that pulled him over lacked reasonable and articulable suspicion to conduct the traffic stop.

{¶ 3} The underlying facts of the traffic stop were not in dispute. Appellant lawfully parked his car on Duncan Street, about 20 to 30 feet west of its intersection with High Street in the Clintonville area of Columbus. Duncan Street has a stop sign at its intersection with High Street. After going to a store, appellant got back in his car and began to drive away. Because there was a car parked in front of his on the street, he had to "veer to the left and then come back to the stop sign and stop." (Tr. 46.) After he came to a stop at the stop sign, he activated his turn signal and then turned onto High Street. Law enforcement officers were in a police cruiser on the opposite side of the intersection. The officers observed appellant stop at the stop sign, activate his turn signal and then proceed to turn onto High Street. Based upon these observations, the officers initiated a traffic stop during which they found drugs.

{¶ 4} The city ordinance relied on by the officers to stop appellant, C.C.C. 2131.14(a),[1] provides in relevant part that "[n]o person shall turn a vehicle or move right or left upon a street or highway unless and until such person has exercised due care to ascertain that the movement can be made with reasonable safety nor without giving an appropriate signal in the manner hereinafter provided. When required, a signal of intention to turn or move right or left shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning." Appellant argued that he did not violate this ordinance because he was parked less than 100 feet from the intersection and, therefore, could not have activated his turn signal 100 feet before turning.

{¶ 5} The trial court appeared to empathize with appellant's argument, noting that it was not the "biggest, strongest traffic stop I've ever seen" (Tr. 62), but nevertheless concluded that the officers legally stopped appellant for the traffic violation. Therefore, the trial court denied appellant's motion to suppress the drugs found during the traffic

---

[1] In relevant part, the city ordinance is identical to R.C. 4511.39, the state statute regarding the use of turn signals.

stop.  As a result, appellant entered a no contest plea to the charges, and the trial court sentenced him accordingly.

{¶ 6}  Appellant now appeals and assigns the following errors:

> I. THE TRIAL COURT ERRED BY INDICATING IN ITS FINAL JUDGMENT ENTRY THAT APPELLANT HAD ENTERED A "GUILTY" PLEA WHEN, IN FACT, APPELLANT ENTERED A "NO CONTEST" PLEA.
>
> II. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS.

## II.  Did Appellant Enter a Guilty Plea or a Plea of No Contest?

{¶ 7}  Appellant argues in his first assignment of error that the trial court's judgment entry erroneously indicates that he entered a guilty plea.  The state concedes that appellant entered a no contest plea and that the notation of a guilty plea on appellant's judgment entry must be a clerical error.  Upon a review of the transcript, we agree.  Accordingly, we sustain appellant's first assignment of error and remand the matter to the trial court to correct its error.

## III.  Appellant's Motion to Suppress

{¶ 8}  Appellant's second assignment of error addresses the trial court's denial of his motion to suppress.

### A.  Standard of Review

{¶ 9}  " 'Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses.  Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.' " (Citations omitted.)  *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 100, quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.  Here, appellant does not dispute any of the trial court's factual findings.  He contends that the trial court's legal conclusion was wrong.  Thus, we must independently determine whether the officers had reasonable and articulable suspicion to stop appellant.

**B. Did the Officers have Reasonable Suspicion that Appellant Committed a Traffic Violation?**

{¶ 10} The Fourth Amendment to the U.S. Constitution and Ohio Constitution, Article I, Section 14, is the guarantee of the right to be free from unreasonable searches and seizures. *State v. Orr,* 91 Ohio St.3d 389, 391 (2001). It is well-established that stopping an automobile, thus temporarily detaining its occupants, constitutes a seizure under the Fourth Amendment to the U.S. Constitution. *State v. Dorsey,* 10th Dist. No. 04AP-737, 2005-Ohio-2334, ¶ 17, citing *Delaware v. Prouse,* 440 U.S. 648, 653 (1979). A traffic stop is constitutionally valid, however, if an officer has a reasonable and articulable suspicion that a motorist has committed, is committing, or is about to commit a crime, including a traffic violation. *State v. Mays,* 119 Ohio St.3d 406, 2008-Ohio-4539, ¶ 7, citing *Prouse* at 663; *State v. McCandlish*, 10th Dist. No. 11AP-913, 2012-Ohio-3765, ¶ 10 (observation of traffic violation is enough for reasonable and articulable suspicion to stop car); *State v. Barker*, 10th Dist. No. 11AP-170, 2011-Ohio-5769, ¶ 12-13. "Reasonable suspicion entails some minimal level of objective justification, 'that is, something more than an inchoate and unparticularized suspicion or "hunch," but less than the level of suspicion required for probable cause.' " *State v. Jones,* 188 Ohio App.3d 628, 2010-Ohio-2854, ¶ 17 (10th Dist.), quoting *State v. Jones,* 70 Ohio App.3d 554, 556-57 (2d Dist.1990). In evaluating reasonable suspicion to support the propriety of a traffic stop, a reviewing court must consider the totality of the circumstances surrounding the stop as " 'viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.' " *McCandlish* at ¶ 7, quoting *State v. Andrews*, 57 Ohio St.3d 86, 87-88 (1991).

{¶ 11} It is undisputed that appellant did not activate his turn signal until after he stopped at the intersection. Therefore, it is undisputed that appellant did not continuously signal his intent to turn for at least 100 feet before turning. Based on these facts, the state contends that the officers had reasonable suspicion to believe appellant violated C.C.C. 2131.14(a). A violation of this ordinance would provide the officers with reasonable suspicion to constitutionally stop appellant. *State v. Jerew*, 3d Dist. No. 9-98-47 (Feb. 22, 1999), citing *City of Marysville v. Creameans*, 3d Dist. No. 14-91-27 (Jan. 27, 1992). Appellant contends that the officers lacked reasonable suspicion to stop

him because he did not violate the ordinance. He argues that he did not violate the ordinance because he was parked less than 100 feet from the intersection, and therefore, it was impossible to continuously signal his turn for at least 100 feet before turning as required by C.C.C. 2131.14(a).

{¶ 12} The relevant question in this case is not whether appellant had a possible defense to the violation. *Mays* at ¶ 17; *State v. Acord*, 4th Dist. No. 05CA2858, 2006-Ohio-1616, ¶ 13-15 (regardless of whether defense to violation would have prevailed at trial, traffic stop was reasonable and constitutional). Instead, the relevant question in the context of determining the constitutionality of a traffic stop is whether the officers had a reasonable suspicion that appellant committed a traffic violation. *Barker* at ¶ 10-11. Based on the events observed by the police officers, we conclude they had reasonable suspicion. The officers first observed appellant either as he approached or actually stopped at the stop sign. They did not know where he had come from or how far he had been driving down the road. What they did see, however, was that he did not activate his turn signal until he stopped at the stop sign. This is enough for a police officer to have reasonable suspicion that appellant violated C.C.C. 2131.14(a). *State v. Hardy*, 2d Dist. No. 24114, 2011-Ohio-241, ¶ 26 (police officer's observation of vehicle approach and stop at stop sign and then activate turn signal supports reasonable suspicion of failure to signal 100 feet prior to turn); *Acord* at ¶ 14-15 (finding that police officer's observation of driver who did not activate turn signal until after stopped provided reasonable suspicion to conduct stop).

{¶ 13} The *Acord* case is particularly instructive, as the facts are strikingly similar to the present case. There, a police officer observed Acord driving her car toward an intersection but did not see where it came from. Acord did not activate her turn signal until after stopping at the intersection. The police officer stopped her for that violation[2] and found drugs in the car. On appeal, after the trial court denied her motion to suppress, Acord argued that it was impossible for her to comply with the ordinance because she had not been driving on the road for 100 feet before the intersection and, therefore, could not comply with the law. The court rejected her argument because the question was not whether she violated the law but whether the traffic stop was supported by reasonable

---

[2] The city ordinance involved is identical to the relevant Columbus City Code as well as R.C. 4511.39.

suspicion. *Id.* at ¶ 13. The court concluded that it was because the officer observed Acord activate her turn signal just before turning. *Id.* at ¶ 15. The court noted that the question would have been more difficult if the officer had observed Acord pull onto the street less than 100 feet from the intersection, but given what the officer observed, the traffic stop was supported by reasonable suspicion.

{¶ 14} The facts in *Acord* are almost identical to the present case, in which the officers did not observe appellant enter the street but did see him activate his turn signal only after coming to a stop at the intersection. That observation provides the minimal level of objective justification required in order for a police officer to have reasonable suspicion that appellant violated C.C.C. 2131.14(a) by failing to properly activate a turn signal. Whether or not appellant might have had a defense to the traffic citation is not a question we need to address.

{¶ 15} We conclude that the police officers' observations were sufficient to constitute reasonable suspicion that appellant committed a traffic violation. Thus, the resulting traffic stop was constitutionally permissible, and the trial court did not err by denying appellant's motion to suppress. We overrule appellant's second assignment of error.

## IV. Conclusion

{¶ 16} We sustain appellant's first assignment of error and overrule his second assignment of error. Additionally, we grant the state's motion to strike appellant's reply brief, as this court's local rules do not allow for a reply brief to be filed in a case assigned to the accelerated calendar. Loc.R. 8(B). Accordingly, we affirm the judgment of the Franklin County Court of Common Pleas denying appellant's motion to suppress but must remand the matter for the trial court to correct its clerical error to indicate that appellant entered a no contest plea.

*Appellee's motion to strike granted;*
*judgment affirmed; cause remanded with instructions.*

CONNOR and O'GRADY, JJ., concur.