[Cite as *State v. Wheeler*, 2025-Ohio-5165.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 2025-CA-9 |
| Appellee | : | |
| | : | Trial Court Case No. 2024CR0248 |
| v. | : | |
| | : | (Criminal Appeal from Common Pleas |
| ERIK MICHEAL WHEELER | : | Court) |
| | : | |
| Appellant | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on November 14, 2025, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

MICHAEL L. TUCKER, JUDGE

EPLEY, P.J., and HANSEMAN, J., concur.

KRISTIN L. ARNOLD, Attorney for Appellant
MEGAN A. HAMMOND, Attorney for Appellee

TUCKER, J.

{¶ 1} Defendant-appellant Erik Michael Wheeler appeals from his conviction of operating a vehicle under the influence. For the reasons outlined below, we affirm.

## I.      Factual and Procedural Background

{¶ 2} On October 1, 2023, Fairborn Police Department Officers were dispatched to Mann Avenue upon a report that a red truck had struck and damaged a tree located on the caller's residential lot, after which it had immediately left the scene. Officers Caleb Weaver and Codie Henning responded separately to the call. Weaver went the scene of the tree strike where he noted damage to a tree and a trail of fluid on the roadway leading away from the tree. Weaver followed the trail and ultimately located a red truck parked partially on the roadway and partially in the grass. Upon reaching the truck, Weaver found that Henning had already reached the vehicle. The officers observed damage to the side of the truck, including wood chips apparently embedded in the damaged portion of the vehicle.

{¶ 3} The officers spoke with the driver of the truck, Wheeler, who claimed he was parked partially in the grass because the truck's steering column was damaged and he was having difficulty steering the vehicle. Wheeler denied consuming any alcohol. Wheeler said that he was on his way home from a 12-hour work shift and that he was tired because he had slept only approximately 6 hours in the past 48 hours. The officers asked Wheeler whether he had hit anything while driving. Wheeler stated that he had hit a curb and that he hits curbs "all the time." When the officers asked whether he had hit a tree, Wheeler

responded, "no comment." The officers did not smell an odor of alcohol but did notice Wheeler had bloodshot and watery eyes. They also noted that his speech and movements were slow and that his clothing was in "disarray." The officers decided to conduct field sobriety tests. Upon concluding the tests, the officers arrested Wheeler.

{¶ 4} On April 19, 2024, Wheeler was indicted on one count of operating a vehicle under the influence of alcohol or drugs ("OVI") in violation of R.C. 4511.19(A)(1)(a). Because Wheeler had three prior OVI convictions within ten years of his offense, it constituted a fourth-degree felony.

{¶ 5} On August 12, 2024, Wheeler filed a motion to suppress. A hearing was conducted on October 30, 2024. Both officers testified. According to the officers, Wheeler was "unable to logically recount the route he took home from work." Based on Wheeler's conduct and appearance, both officers suspected that he was under the influence of drugs, so they decided to conduct field sobriety testing.

{¶ 6} Officer Henning administered the testing. He testified his training included the National Highway Traffic Safety Administration ("NHTSA") standards for field sobriety testing and Advanced Roadside Impaired Driving Enforcement ("ARIDE") training. According to Henning, he administered a mix of NHTSA and ARIDE testing to Wheeler.

{¶ 7} Henning initially administered the horizontal gaze nystagmus ("HGN") test but observed no indications of intoxication with that test. Henning then administered an ARIDE test known as the lack of convergency test. Like the HGN test, the lack of convergency test requires the subject to follow an object with their eyes. Henning testified he observed indicia of intoxication with this test. Next Henning instructed Wheeler on the walk-and-turn test. After being instructed twice, Wheeler was unable to repeat the instructions, and during the test itself, he committed two errors. Henning also gave the one-legged-stand test and

3

observed Wheeler swaying and using his arms to maintain his balance. Wheeler also performed the modified Romberg test, which required him to stand with his feet together, eyes closed, and tilt his head slightly back while estimating the lapse of 30 seconds. He properly performed that test. Finally, Wheeler was instructed on the finger-to-nose test, which required him to touch his pointer finger to his nose. When Wheeler used his right hand, he delayed starting the test and then missed his nose. When using his left hand, Wheeler missed his nose and touched his face under his eye.

{¶ 8} The trial court denied the motion to suppress. Wheeler subsequently entered a no-contest plea to the offense. The trial court sentenced him to a prison term of 30 months. Wheeler appeals.

## II.    Suppression

{¶ 9} Wheeler's assignment of error states:

THE TRIAL COURT ERRED IN DENYING THE MOTION TO SUPPRESS BECAUSE LAW ENFORCEMENT UNLAWFULLY PROLONGED THE TRAFFIC STOP AND LACKED A REASONABLE SUSPICION AND PROBABLE CAUSE TO CONTINUE DETAINING AND ARRESTING MR. WHEELER.

{¶ 10} Wheeler contends the trial court should have sustained his motion to suppress evidence.

{¶ 11} The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 8 (1968). Warrantless searches and seizures violate this prohibition unless conducted pursuant to one of the "few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). One of these exceptions "is commonly known as an investigative or *Terry*

4

stop," which includes the temporary detention of motorists for the enforcement of traffic laws. *State v. Dorsey*, 2005-Ohio-2334, ¶ 17 (10th Dist.), citing *Terry* at 1. Probable cause is not required for a *Terry* stop. *Id.*; *State v. Allen*, 2021-Ohio-3047, ¶ 32 (2d Dist.). Rather, a police officer may briefly stop and temporarily detain a person to investigate possible criminal activity if the officer has a reasonable, articulable suspicion that criminal activity may be afoot. *Terry*, 392 U.S. 1; *State v. Mays*, 2008-Ohio-4539, ¶ 7-8.

{¶ 12} Wheeler does not contest the appropriateness of the initial encounter with the officers. Instead, he asserts the officers improperly prolonged the encounter by conducting field sobriety testing without probable cause to do so. He claims that "[o]nce officers identified [him] and the vehicle was safely stopped, the justification for the original Hit-Skip investigation was complete." Wheeler also contends that the totality of the circumstances failed to establish probable cause for his arrest following the sobriety tests.

{¶ 13} Contrary to Wheeler's argument, a police officer "do[es] not need probable cause in order to conduct sobriety tests. Instead, they must simply have 'reasonable suspicion, supported by specific and articulable facts'" that the driver is under the influence of drugs or alcohol. *State v. Wells*, 2005-Ohio-5008, ¶ 22 (2d Dist.), quoting *State v. Durrum*, 1995 WL 558808, *3 (2d Dist. Sept. 2, 1995); *State v. Knox*, 2006-Ohio-3039, ¶ 11 (2d Dist.). The determination of whether reasonable suspicion exists is "based on the totality of circumstances 'viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.'" *State v. Hairston*, 2019-Ohio-1622, ¶ 10, quoting *State v. Andrews*, 57 Ohio St.3d 86, 87-88 (1991).

{¶ 14} On the other hand, a lawful arrest does depend upon the existence of probable cause. Probable cause to support an arrest "exists when a reasonably prudent person would believe that the person to be arrested has committed a crime." *State v. Adams*, 2011-Ohio-

5

4008, ¶ 7 (2d Dist.), citing *State v. Timson*, 38 Ohio St.2d 122 (1974).

{¶ 15} Here the officers were investigating a hit-and-run collision that occurred just a few minutes before midnight. Pictures admitted into evidence demonstrate that the tree sustained damage. The motion hearing testimony indicates that red paint chips were observed on the tree and at its base. A large puddle of fluid was observed at that location, and a trail of fluid led to Wheeler's truck. The testimony and officer bodycam video indicate that Wheeler stopped his vehicle prior to the officers initiating a traffic stop. The vehicle was partially on the road with its back tires in the grass. The officers noted a large portion of the side of the vehicle showed significant scraping and discoloration, including large pieces of chipped wood embedded in the body of the vehicle, consistent with swiping against a tree. Wheeler's eyes were watery and red, his clothing was in disarray, his speech was slow and somewhat slurred, and his demeanor was sluggish. Wheeler was unable to articulate the route he had been driving prior to the stop. He claimed he had merely hit a curb even though his truck had significant damage to its side. Although Wheeler did well on some of the sobriety tests, he had issues with multiple other tests. Henning testified that Wheeler's performance demonstrated difficulty with the tests requiring divided attention skills, which was indicative of drug-impaired driving.

{¶ 16} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 2003-Ohio-5372, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id.* When reviewing a ruling on a motion to suppress, deference is given to the trial court's findings of fact so long as they are supported by competent, credible evidence. *Id.* at ¶ 8. With respect to the trial court's conclusions of law,

6

however, our standard of review is de novo; therefore, we must decide whether the facts satisfy the applicable legal standard. *Id.*

{¶ 17} Under these facts, we conclude that Henning, who was specially trained in detecting drug impaired driving, had reasonable, articulable suspicion to detain Wheeler to conduct field sobriety tests. Wheeler's inability to perform some of those tests, along with the totality of the circumstances, provided probable cause for his arrest for OVI. Thus, we cannot conclude that the trial court erred by denying the motion to suppress.

{¶ 18} Accordingly, Wheeler's assignment of error is overruled.

### III.    Conclusion

{¶ 19} Wheeler's assignment of error being overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

EPLEY, P.J., and HANSEMAN, J., concur.